UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

RIVKA MARTHA MORIAH,
individually, as personal representative of the Estate
of Avraham David Moses, and as the natural
guardian of minor plaintiffs E.D.M.(1), N. M., C.M.,
A.S.M. and Z.G.M.,

Docket no.
12 CV 1594 (SAS)

NAFTALI ANDREW MOSES,
individually, as personal representative of the Estate
of Avraham David Moses, and as the natural
guardian of minor plaintiffs E.D.M.(1), O.D.M. and
E.D.M.(2),

**COMPLAINT**

**Jury trial demanded**

DAVID MORIAH,
individually and as the natural guardian of minor
plaintiffs N.M., C.M., A.S.M. and Z.G.M.,

E.D.M.(1), minor,

N.M., minor,

C.M., minor,

O.D.M., minor,

E.D.M.(2), minor,

A.S.M., minor,

Z.G.M., minor,

HAGIT GIBOR,

EITAN YOEL MORIAH,

YIFAT MORIAH,

ATARA NESIA MORIAH,

NAFTALI SHITRIT,

GILA RACHEL SHITRIT,
individually and as the natural guardian of minor
plaintiffs O.S., N.S., Y.S., A.S., E.S. and H.S.,

YAAKOV SHITRIT,
individually and as the natural guardian of minor
plaintiffs O.S., N.S., Y.S., A.S., E.S. and H.S.,

MEIRI SHITRIT,

O.S., minor,

N.S., minor,

Y.S., minor,

A.S., minor,

E.S., minor,

and H.S., minor,

                                 Plaintiffs,

                    -against-

THE BANK OF CHINA LIMITED,

                              Defendant.
---------------------------------------------------------------------X

Plaintiffs, by their counsel, THE BERKMAN LAW OFFICE, LLC, complain of Defendant, and allege for their complaint, as follows:

## INTRODUCTION

1.      This is a civil action for wrongful death, personal injury, and related damages, pursuant to the Antiterrorism Act ("ATA") 18 U.S.C. § 2333, and supplemental causes of action, arising from a terrorist shooting carried out by the Hamas terrorist organization on March 6, 2008, at the Mercaz Harav Yeshiva in Jerusalem, Israel ("Terrorist Shooting").

2.      The Terrorist Shooting was carried out by Hamas using material support and resources provided by defendant The Bank of China Limited.

3.      Decedent Avraham David Moses, a 16 year-old American citizen, was murdered in the Terrorist Shooting. Plaintiff Naftali Shitrit, an American citizen then 14 years old, was severely wounded in the Terrorist Shooting.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action and over defendant Bank of China Limited, and venue is proper in this Court, pursuant to 18 U.S.C. §§ 2333-2334.

## THE PARTIES

5.      Plaintiff Rivka Martha Moriah, at all times relevant hereto is and was an American citizen and the mother, heir and personal representative of the estate

of decedent Avraham David Moses. Plaintiff Rivka Martha Moriah brings this action individually, on behalf of the estate of Avraham David Moses, and as natural guardian of her minor children plaintiffs E.D.M.(1), N. M., C.M., A.S.M. and Z.G.M.

6.     Plaintiff Naftali Andrew Moses, at all times relevant hereto is and was an American citizen and the father, heir and personal representative of the estate of decedent Avraham David Moses. Plaintiff Naftali Andrew Moses brings this action individually, on behalf of the estate of Avraham David Moses, and as natural guardian of his minor children plaintiffs E.D.M.(1), O.D.M. and E.D.M.(2).

7.     Plaintiff David Moriah, at all times relevant hereto is and was an American citizen and the stepfather of decedent Avraham David Moses. Plaintiff David Moriah brings this action individually and as natural guardian of his minor children plaintiffs N.M., C.M., A.S.M. and Z.G.M.

8.     Plaintiffs E.D.M.(1), N.M., C.M., O.D.M. and E.D.M.(2) at all times relevant hereto are and were American citizens and the siblings of decedent Avraham David Moses.

9.     Plaintiff A.S.M. at all times relevant hereto is and was an American citizen and the step-brother of decedent Avraham David Moses.

10.     Plaintiffs Z.G.M., Hagit Gibor, Eitan Yoel Moriah, Yifat Moriah And Atara Nesia Moriah at all times relevant hereto are and were the step-siblings of decedent Avraham David Moses.

11.     Plaintiff Naftali Shitrit, who was severely wounded in the Terrorist Shooting, at all times relevant hereto is and was an American citizen.

12.     Plaintiff Gila Rachel Shitrit, at all times relevant hereto is and was an American citizen and the mother of plaintiffs Naftali Shitrit, Meiri Shitrit, O.S., N.S., Y.S., A.S., E.S. and H.S. Plaintiff Gila Rachel Shitrit brings this action individually and as natural guardian of her minor children plaintiffs O.S., N.S., Y.S., A.S., E.S. and H.S.

13.     Plaintiff Yaakov Shitrit, at all times relevant hereto is and was the father of plaintiffs Naftali Shitrit, Meiri Shitrit, O.S., N.S., Y.S., A.S., E.S. and H.S. Plaintiff Yaakov Shitrit brings this action individually and as natural guardian of his minor children plaintiffs O.S., N.S., Y.S., A.S., E.S. and H.S.

14.     Plaintiffs Meiri Shitrit, O.S., N.S., Y.S., A.S., E.S. and H.S., at all times relevant hereto are and were American citizens and the siblings of Naftali Shitrit.

15.     Defendant Bank of China Limited ("BOC") is a corporation organized under the laws of the People's Republic of China ("PRC"). Defendant BOC has branches in the State of New York and does extensive business in the State of New York.

16.     Defendant BOC provided material support and resources to Hamas and performed other actions that caused the Terrorist Shooting and harm to the plaintiffs herein.

## STATEMENT OF FACTS

### Hamas

17.     Hamas was formed in the Gaza Strip during the early 1980s.

18.     Hamas is a radical terrorist organization. Hamas' openly-declared goal is the creation of an Islamic state in the territory of Israel, the West Bank and the Gaza Strip, and the destruction of the State of Israel and the murder or expulsion of its Jewish residents. Hamas seeks to achieve this goal by carrying out terrorist attacks against Jewish civilians in Israel, the West Bank and the Gaza Strip. Hamas proudly and openly acknowledges that it uses terrorism to achieve its political goals. Hamas uses terrorism in an effort to coerce, intimidate and influence government decision-makers and the public in Israel to accept Hamas' demands.

19.     Between the time of its founding and March 6, 2008 (and until the present day), Hamas has carried out thousands of terrorist attacks in Israel, the West Bank and the Gaza Strip, in which scores of Israeli and U.S. citizens were murdered and hundreds more wounded.

20.     Between the time of its founding and March 6, 2008, Hamas' policy and practice of carrying out terrorist attacks was and is notorious and well known to the public at large, including defendant BOC.

21.     Between 2003 and March 6, 2008, the courts of the United States published numerous decisions finding that Hamas was responsible for terrorist attacks in which American citizens were killed or injured.

22.     Between 1999 and March 6, 2008, the annual Patterns of Global Terrorism Report published by the United States Department of State consistently reported that Hamas was responsible for terrorist attacks in which American citizens were killed or injured.

23.     Hamas has been designed by the United States as a Foreign Terrorist Organization ("FTO") continuously since 1997 and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

**Bank of China's Provision of Material Support and Resources to Hamas**

24.     Hamas is subject to strict economic sanctions programs imposed by the United States as the result of its designation as an FTO and SDGT (collectively hereinafter: "U.S. Sanctions Regime").

25.     The U.S. Sanctions Regime is intended to prevent Hamas from conducting banking activities, and thereby limit its ability to plan, to prepare and to carry out terrorist attacks.

26.     The U.S. Sanctions Regime is effective when it is observed and enforced. Hamas is unable to conduct banking activities via banks and other financial institutions which observe and enforce the U.S. Sanctions Regime.

27.     If all banks and financial institutions around the world observed and enforced the U.S. Sanctions Regime, the ability of Hamas to conduct banking activities would be severely restricted, and Hamas' ability to plan, to prepare and to carry out terrorist attacks would be significantly reduced.

28.     Nearly all banks and financial institutions around the world observe and enforce the U.S. Sanctions Regime. Hamas is therefore forced to conduct its banking activities using those very few banks and financial institutions which do not observe and enforce the U.S. Sanctions Regime.

29.     Defendant BOC does not observe or enforce the U.S. Sanctions Regime.

30.     Beginning in July 2003, BOC began to provide extensive banking services to Hamas. Specifically, between 2003 and the date of the Terrorist Shooting, BOC executed dozens of dollar wire transfers for Hamas, totaling several million dollars. These dollar transfers were initiated by the Hamas leadership in Iran, Syria and elsewhere in the Middle East, and were executed by and through BOC's branches in the United States. Most of these transfers were made to account number 4750401-0188-150882-6 at a BOC branch in Guanzhou, China, in the name of "S.Z.R Alshurafa." The owner of the account, Said al-Shurafa ("Shurafa") is a senior officer and agent both of Hamas and the Palestine Islamic Jihad terrorist organization. Other dollar transfers were made by Hamas via BOC's branches in the United States to another account belonging to Shurafa at the same BOC branch in Guanzhou, account number 4762307-0188-034456-6. The wire transfers referred to in this paragraph are referred to collectively hereinafter as "Transfers."

31.     Pursuant to the Hamas' instructions, upon receiving the Transfers in his BOC accounts Shurafa moved the sums to the Hamas terrorist leadership in Israel, the West Bank and the Gaza Strip, for the purpose of planning, preparing for and executing terrorist attacks.

32.     Terrorist organizations such as Hamas need wire transfer and other banking services in order to plan, to prepare for and to carry out terrorist attacks.

33.     Provision of wire transfer or other banking services to Hamas enables Hamas to plan, to prepare for and to carry out terrorist attacks, and enhances Hamas' ability to plan, to prepare for and to carry out such attacks.

34.     Hamas carried out the Transfers in order to transfer and receive funds necessary for planning, preparing and carrying out the Hamas' terrorist activity, including bombing attacks against civilians generally and the Terrorist Shooting specifically.

35.     The Transfers substantially increased and facilitated Hamas' ability to plan, to prepare for and to carry out bombing attacks on civilians, including the Terrorist Shooting.

36.     The Transfers were enabled, facilitated and proximately caused by the conduct of defendant BOC described herein. As the result of BOC's conduct, Hamas was able to transfer several million dollars in funds to its terrorist leadership in Israel, the West Bank and the Gaza Strip, which substantially increased and facilitated Hamas' ability to plan and carry out terrorist attacks, including the Terrorist Shooting. The Terrorist Shooting was thereby enabled, facilitated and proximately caused by the conduct of defendant BOC described herein.

37.     Plaintiffs' injuries are therefore the direct and proximate result of defendant BOC's' conduct.

38.     At all times, BOC had actual knowledge that the Transfers were being made by the Hamas for the purpose of carrying out terrorist attacks, and that the Transfers enhanced Hamas' ability to plan, prepare for and carry out such attacks. In

April 2005, officials of the counterterrorism division of the Office of the Prime Minister of the State of Israel (collectively hereinafter: "Israeli officials") met with officials of the PRC's Ministry of Public Security and the PRC's central bank (collectively hereinafter: "PRC officials") regarding the Transfers. At that meeting in April 2005, the Israeli officials emphasized to the PRC officials that the Transfers were being made by Hamas for the purpose of carrying out terrorist attacks, and that the Transfers enhanced Hamas' ability to plan, prepare for and carry out such attacks. At that April 2005 meeting, the Israeli officials demanded that the PRC officials take action to prevent BOC from making further such transfers. In April 2005, the PRC officials notified the BOC of the Israeli officials' statements that the Transfers were being made by the Hamas for the purpose of carrying out terrorist attacks and that the Transfers enhanced Hamas' ability to plan, prepare for and carry out such attacks. At the same time (i.e. in April 2005) the PRC officials also notified BOC of the Israeli officials' demand the BOC halt the Transfers, but the BOC (with the approval of the PRC) ignored this demand and continued to carry out further Transfers between April 2005 and the date of the Terrorist Shooting (and subsequently).

   39. Even prior to the Israeli officials' demand to halt the Transfers, BOC knew and/or should have known that the Transfers were being made for illegal purposes, *inter alia* in light of the following facts:

    a. Most of the Transfers were made in cash;

    b. Most of the Transfers were withdrawn by Shurafa on the same day they were received or on the following day, often in cash;

c.  The sums involved were large, mostly in the range of $100,000 or more;

d.  The intervals between transfers were often short (weeks or days) and the sums transferred were often identical or similar. For example, many of the transfers were for $99,960, $99,970 or $99,990;

e.  Many of the transfers were for round figures;

f.  Many of the Transfers were structured to be slightly less than round figures. For example, many of the transfers were for $99,960, $99,970, $99,990 or $199,965;

g.  This pattern of transfers continued for a period of years;

h.  The Transfers have no business or apparent lawful purpose, and there was no reasonable explanation for them.

40.   The facts enumerated in the previous paragraph are universally recognized by all professional bankers, including BOC and its employees, as typical indicia of transactions made for illegal purposes.

41.   Even prior to the Israeli officials' demand to halt the Transfers, BOC knew and/or should have known that the Transfers were being made for illegal purposes because BOC had and has statutory duties, *inter alia* under United States law and under the rules promulgated by the Financial Action Task Force ("FATF"), to monitor, report and refuse to execute suspicious and/or irregular banking transactions. The Transfers were facially suspicious and irregular in light of each and all of the facts enumerated in paragraph 39. By executing the Transfers, BOC breached its statutory

duties to monitor, report and refuse to execute suspicious and/or irregular banking transactions.

42.      Even prior to the Israeli officials' demand to halt the Transfers, BOC knew and/or should have known that the Transfers were being made for illegal purposes because BOC had and has statutory duties, *inter alia* under United States law and the rules promulgated by FATF, to know its customers and perform due diligence. By executing the Transfers, BOC breached its statutory duties to know its customers and perform due diligence.

**The Terrorist Shooting**

43.      On March 6, 2008, at approximately 8:30 pm, an agent and operative of Hamas, Alaa Abu Dhein, arrived at the Mercaz Harav Yeshiva in Jerusalem, Israel and, acting on behalf of Hamas, opened fire with an automatic weapon on hundreds of yeshiva students.

44.      Eight students were murdered in the attack, including decedent Avraham David Moses, who was in high school. Many other students were wounded in the attack, including plaintiff Naftali Shitrit, also a high school student, who suffered severe physical injuries.

45.      Hamas planned, made the preparations necessary for and carried out the Terrorist Shooting utilizing funds received by Hamas as part of the Transfers, and/or utilizing funds received by Hamas in exchange or consideration for the Transfers, and/or utilizing funds that were freed up and/or otherwise made available

to Hamas as a result of the Transfers, and/or using funds drawn from a pool of funds

created in part by the Transfers.

### FIRST COUNT

### ON BEHALF OF ALL PLAINTIFFS AGAINST DEFENDANT BANK OF CHINA INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333

46.     The preceding paragraphs are incorporated by reference as though

fully set forth herein.

47.     The actions of defendant BOC subsequent to April 2005 (at which

time the PRC officials notified the BOC of the Israeli officials' statements that the

Transfers were being made by Hamas for the purpose of carrying out terrorist attacks

and that the Transfers enhanced Hamas' ability to plan, prepare for and carry out such

attacks, and at which time the PRC officials notified BOC of the Israeli officials' demand

the BOC halt the Transfers), constituted "acts of international terrorism" as defined in

18 U.S.C. § 2331.

48.     As required by § 2331, the actions of defendant BOC constituted a

violation of the criminal laws of the United States and of the several States, including,

without limitation, the criminal provisions of 18 U.S.C. §§ 2339A, 2339B and 2339C,

which prohibit the provision of material support and resources to terrorist

organizations.

49.     As required by § 2331, BOC's actions were dangerous to human

life, since Hamas is a violent terrorist organization which since its establishment has

murdered scores of innocent civilians, and openly proclaims its intention to murder other such innocent civilians.

50.    As required by § 2331, BOC's actions transcended national boundaries in terms of the means by which they were accomplished, the persons they appeared intended to intimidate or coerce, and the locales in which BOC operates.

51.    Section 2331(1)(B) defines "international terrorism" as "activities that .. appear to be intended .. to intimidate or coerce a civilian population [or] to influence the policy of a government by intimidation or coercion." However, § 2331(1)(B) does not impose "a state-of-mind requirement; it is a matter of external appearance rather than subjective intent," *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685, 694 (7th Cir. 2008). This condition was satisfied here by the fact that subsequent to April 2005 BOC knowingly continued to carry out the Transfers after being expressly warned of the consequences of its actions and asked to desist, since that conduct – defiantly continuing to assist Hamas – created the objective "external appearance" required by § 2331(1)(B) that BOC shared Hamas' goals of intimidating and coercing a civilian population and of influencing the policy of a government by intimidation and coercion.

52.    Alternatively, to the extent that § 2331(1)(B) imposes a subjective state-of-mind requirement, that requirement was met here by the following facts:

a.    The PRC considers itself a potential rival and competitor of the United States. In order to strengthen its own position and undermine that of the United

States, among other reasons, the PRC has acquired substantial political and economic interests in the Middle East and Islamic regions of Africa.

b.      To further its foreign policy goals, the PRC, along with the Communist Party of China (the "Party") and the Chinese central government (the "Central Government"), have been willing to facilitate the ongoing campaign of terrorism against Israel conducted by terrorist groups such as Hamas. The PRC, the Party and the Central Government do so in order to influence the policy of the Israeli government and intimidate the civilian population in Israel and thereby to strengthen the PRC's own position and undermine an ally of the United States.

c.      The PRC is an authoritarian state whose citizens and enterprises are expected and required to support and advance the policies and goals of the Party and the Central Government.

d.      As such, banking institutions in the PRC are regulated and supervised by agencies controlled by the Party. The Party, through various mechanisms that include the Leading Group on Financial and Economic Affairs, all of which exist alongside the boards of directors, monitors the banks' activities. Accordingly, the Party strongly influences the decision-making process in Chinese banks while monitoring their regular banking activities. The Party makes sure that the policy decisions of the boards of directors reflect and advance the policies and goals of the Party and Central Government.

e.      At all times, including the period during which it carried out the Transfers, defendant BOC acted to advance the Party's and Central Government's

policies and goals, including the Party's and Central Government's policies and goals vis-à-vis Hamas and its terrorist activities.

f.     Defendant BOC carried out the Transfers, and refused to halt the Transfers, because BOC acted in accordance with the directions of the Party and Central Government so as to facilitate Hamas' use of terrorism to intimidate the Israeli government and public.

g.     Thus, the actions of defendant BOC described herein appear to be intended, and were in fact intended, to intimidate and coerce a civilian population, and to influence the policy of a government by intimidation and coercion.

53.     The actions of defendant BOC subsequent to April 2005 therefore constituted "acts of international terrorism" as defined in 18 U.S.C. §§ 2331 and 2333.

54.     Decedent Avraham David Moses was murdered in the Terrorist Shooting. The murder of Avraham David Moses caused decedent, his estate and plaintiffs Rivka Martha Moriah, Naftali Andrew Moses, David Moriah, E.D.M.(1), N.M., C.M., O.D.M., E.D.M.(2), A.S.M., Z.G.M., Hagit Gibor, Eitan Yoel Moriah, Yifat Moriah and Atara Nesia Moriah, severe injury, including: conscious pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

55.     Plaintiff Naftali Shitrit suffered severe physical, psychological, emotional and other injuries as a result of the Terrorist Shooting, including: disfigurement; loss of physical and mental functions; extreme pain and suffering; loss of

guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; loss of solatium; and loss of future income.

56.     The injuries suffered by plaintiff Naftali Shitrit in the Terrorist Shooting caused plaintiffs Gila Rachel Shitrit, Yaakov Shitrit, Meiri Shitrit, O.S., N.S., Y.S., A.S., E.S., and H.S. severe harm, including: loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; loss of solatium; and pecuniary loss and loss of income.

57.     Defendant BOC is therefore liable for all of plaintiffs' damages in such sums as may hereinafter be determined, to be trebled pursuant to 18 U.S.C. § 2333(a).

## SECOND COUNT

## ON BEHALF OF ALL PLAINTIFFS AGAINST DEFENDANT BANK OF CHINA AIDING AND ABETTING INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333

58.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

59.     Hamas uses terrorism in an effort to coerce, intimidate and influence government decision-makers and the public in Israel to accept Hamas' demands.

60.     Hamas' actions described herein were dangerous to human life and constituted a violation of the criminal laws of the United States and the several States, since Hamas is a violent terrorist organization which since its establishment has

murdered scores of innocent Israeli and American civilians, and openly proclaims its intention to murder other such innocent civilians.

61.     Hamas' actions described herein transcended national boundaries in terms of the means by which they were accomplished, the persons they appeared intended to intimidate or coerce, and the locales in which Hamas operates.

62.     The actions of Hamas described herein therefore constituted "acts of international terrorism" as defined in 18 U.S.C. §§ 2331 and 2333.

63.     Defendant BOC knowingly provided Hamas with ongoing, substantial banking services which enabled, facilitated, supported and assisted Hamas to carry out the Terrorist Shooting.

64.     The actions of defendant BOC therefore constituted aiding and abetting Hamas' "acts of international terrorism" within the meaning of 18 U.S.C. §§ 2331 and 2333.

65.     To the extent, if any, that aiding and abetting liability under § 2333 requires that the aider and abettor seek to advance the goals of the primary tortfeasor, that condition is met here by the following facts:

a.      The PRC considers itself a potential rival and competitor of the United States. In order to strengthen its own position and undermine that of the United States, among other reasons, the PRC has acquired substantial political and economic interests in the Middle East and Islamic regions of Africa.

b.      To further its foreign policy goals, the PRC, along with the Communist Party of China (the "Party") and the Chinese central government (the

"Central Government"), have been willing to facilitate the ongoing campaign of terrorism against Israel conducted by terrorist groups such as Hamas.

c.      The PRC is an authoritarian state whose citizens and enterprises are expected and required to support and advance the policies and goals of the Party and the Central Government.

d.      As such, banking institutions in the PRC are regulated and supervised by agencies controlled by the Party. The Party, through various mechanisms that include the Leading Group on Financial and Economic Affairs, all of which exist alongside the boards of directors, monitors the banks' activities. Accordingly, the Party strongly influences the decision-making process in Chinese banks while monitoring their regular banking activities. The Party makes sure that the policy decisions of the boards of directors reflect and advance the policies and goals of the Party and Central Government.

e.      At all times, including the period during which it carried out the Transfers, defendant BOC acted to advance the Party's and Central Government's policies and goals, including the Party's and Central Government's policies and goals vis-à-vis Hamas and its terrorist activities.

f.      Defendant BOC carried out the Transfers, and refused to halt the Transfers subsequent to April 2005, because BOC acted in accordance with the directions of the Party and Central Government so as to facilitate Hamas' use of terrorism.

g.    Thus, the actions of defendant BOC described herein were intended to advance the goals of the Hamas.

66.    As a direct and proximate result of BOC's conduct decedent Avraham David Moses was murdered, plaintiff Naftali Shitrit was wounded, and the plaintiffs suffered the harm described herein.

67.    Defendant BOC is therefore liable for all of plaintiffs' damages in such sums as may hereinafter be determined, to be trebled pursuant to 18 U.S.C. § 2333(a).

## THIRD COUNT

### ON BEHALF OF ALL PLAINTIFFS AGAINST DEFENDANT BOC
### NEGLIGENCE

### Under the Law of the State of Israel

68.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

69.    Pursuant to Fed.R.Civ.P. 44.1 plaintiffs hereby give notice of their intention to rely on the law of the State of Israel.

70.    Causes of action in tort in Israeli law are codified in the *Civil Wrongs Ordinance (New Version) - 1968*, (hereinafter "CWO"). The CWO provides that any person injured or harmed by the civil wrongs enumerated in the CWO is entitled to relief from the person liable or responsible for the wrong.

71.    CWO § 35 creates a "civil wrong" of Negligence.

72.     CWO § 35 provides that a person is liable for the civil wrong of Negligence when he commits an act which a reasonable and prudent person would not have committed under the same circumstances; or refrains from committing an act which a reasonable and prudent person would have committed under the same circumstances; or, in the performance of his occupation, does not use the skill or exercise the degree of caution which a reasonable person qualified to act in that occupation would have used or exercised under the same circumstances, and thereby causes damage to another person toward whom, under those circumstances he is obligated not to act as he did.

73.     CWO § 36 provides that the obligation stated in the last sentence of § 35 is toward all persons, to the extent that a reasonable person would have under the same circumstances foreseen that, in the ordinary course of events, they were liable to be injured by the act or omission.

74.     Under binding precedent of the Israeli Supreme Court, the tort of Negligence also includes intentional and/or reckless conduct.

75.     By carrying out the Transfers defendant BOC performed acts which a reasonable and prudent person would not have committed under the same circumstances, within the meaning of the CWO.

76.      Defendant BOC refrained from committing acts which a reasonable and prudent person would have committed under the same circumstances, within the meaning of the CWO, in that, *inter alia*, defendant BOC failed to comply with its statutory obligations under United States law and the FATF rules to know its

customers and perform due diligence, and to monitor, report and refuse to execute illegal, suspicious and/or irregular banking transactions.

77.     Defendant BOC did not, in the performance of its occupation, use the skill or exercise the degree of caution which a reasonable person qualified to act in that occupation would have used or exercised under the same circumstances, within the meaning of the CWO, in that, *inter alia*, BOC carried out the Transfers, failed to comply with its statutory obligations to know its customers and perform due diligence, and failed to monitor, report and refuse to execute illegal, suspicious and/or irregular banking transactions.

78.     Defendant BOC acted negligently in connection with the decedent and the plaintiffs, toward whom, in the circumstances described herein, defendant BOC had an obligation not to act as it did. Defendant BOC was obligated not to act as it did because a reasonable person would, under the same circumstances, have foreseen that, in the ordinary course of events, persons such as the decedent and the plaintiffs were liable to be harmed by defendant BOC's acts and omissions described herein.

79.     Defendant BOC's behavior constitutes Negligence under the CWO, and that negligent behavior was the proximate cause of the plaintiffs' harm, which includes: death; severe physical injuries, pain and suffering; loss of pecuniary support; loss of income; loss of consortium; emotional distress; loss of society and companionship and loss of solatium.

80.     Defendant BOC is therefore liable for the full amount of plaintiffs' compensatory damages.

81.     Under Israeli case law a plaintiff harmed by an act of Negligence caused by intentional or reckless conduct is entitled to punitive damages.

82.     Defendant BOC's conduct was criminal in nature, dangerous to human life, outrageous, intentional, reckless and malicious, and so warrants an award of punitive damages.

## FOURTH COUNT

### ON BEHALF OF ALL PLAINTIFFS AGAINST DEFENDANT BOC
### BREACH OF STATUTORY DUTY

### Under the Law of the State of Israel

83.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

84.     CWO § 63 creates a civil wrong of Breach of Statutory Duty defined as the failure to comply with an obligation imposed under any "enactment," if the enactment is intended for the benefit or protection of another person, and if the breach of the enactment caused that person damage of the kind or nature intended to be prevent by the enactment.

85.     Under Israel's *Interpretation Ordinance (New Version)*, an "enactment" within the meaning of the CWO is defined to mean "every law and every regulation," while the terms "law" and "regulation" are defined in turn as acts of the Knesset (Israel's parliament) and of "any authority in Eretz Israel or in Israel," respectively.

86.     CWO § 63(b) provides that for the purpose of CWO § 63, an enactment is deemed to have been enacted for the benefit or protection of a specific person, if it is intended for the benefit or protection of that person, or for the benefit or protection of persons in general, or of persons of a category or definition to which that specific person belongs.

87.     Defendant BOC breached and failed to comply with obligations imposed upon it by numerous enactments, which were intended for the benefit and protection of persons in general, and for the benefit and protection of persons of the type, category and definition to which plaintiffs and the decedent belong, within the meaning of the CWO.

88.     The statutory obligations breached by defendant BOC include, without limitation, the provisions of the following enactments:

a.   Section 4 of Israel's *Prevention of Terrorism Ordinance, 5708 – 1948* (which criminally prohibits the provision of material support to terrorist organizations such as Hamas);

b.   Sections 145 and 148 of Israel's *Penal Law, 5737 – 1977* (which criminally prohibit the provision of material support to terrorist organizations such as Hamas);

c.   Section 85 of Israel's *Defense Regulations (Emergency Period) – 1945* (which criminally prohibits the provision of services and other material support to terrorist organizations such as Hamas).

89.   The conduct of Defendant BOC described herein breached the enactments listed above, despite the fact that Defendant BOC's conduct did not take place in Israel, because Israel has extraterritorial criminal jurisdiction over crimes against the security of the State of Israel and over crimes against the lives and persons of Israeli citizens as such, pursuant to § 13 of Israel's *Penal Law, 5737 – 1977*.

90.   All of the enactments listed above are intended for the benefit and protection of persons in general, for the specific benefit and protection of innocent civilians such as the plaintiffs and the decedent, in that all of the statutory enactments listed above are intended to protect all such persons from terrorist attacks and from all the damages which terrorist attacks are liable to inflict.

91.   Defendant BOC's breach of its statutory obligations was the proximate cause of the harm to the plaintiffs and the death of the decedent, and caused plaintiffs and the decedent damage of the kind and nature intended to be prevented by the statutory enactments which were breached by BOC, including: death; severe physical injuries, pain and suffering; loss of pecuniary support; loss of income; loss of consortium; emotional distress; loss of society and companionship and loss of solatium, in a sum in excess of the minimum jurisdictional limits of this court.

92.   Defendant BOC committed the civil wrong of Breach of Statutory Duty under CWO § 63, and is therefore liable for the full amount of plaintiffs' damages.

93.   Under Israeli case law a plaintiff harmed by an intentional or reckless Breach of Statutory Duty is entitled to punitive damages.

94.    Defendant BOC's conduct was criminal in nature, dangerous to human life, outrageous, intentional, reckless and malicious, and so warrants an award of punitive damages.


**FIFTH COUNT**

**ON BEHALF OF ALL PLAINTIFFS AGAINST DEFENDANT BOC**
AIDING AND ABETTING

**Under the Law of the State of Israel**

95.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

96.    Defendant BOC provided Hamas with banking services that enabled, facilitated, supported and assisted Hamas to carry out the Terrorist Shooting.

97.    Aiding and abetting liability is recognized in Israeli law in § 12 of the CWO, which provides that a person who participates in, assists, advises or solicits an act or omission, committed or about to be committed by another person, or who orders, authorizes, or ratifies such an act or omission, is liable for such act or omission.

98.    Defendant BOC assisted Hamas to carry out the Terrorist Shooting and is therefore liable for the full amount of plaintiffs' damages under CWO § 12.

99.    Under Israeli case law a plaintiff harmed by intentional or reckless conduct is entitled to punitive damages.

100.    Defendant BOC's conduct was criminal in nature, dangerous to human life, outrageous, intentional, reckless and malicious, and so warrants an award of punitive damages.

## JURY DEMAND

101.    Plaintiffs demand trial by jury of all issues.

**WHEREFORE**, plaintiffs demand judgment against the defendant BOC as

follows:

A.      For compensatory damages in an amount to be determined at trial,

to be trebled pursuant to 18 U.S.C. § 2333;

B.      For punitive damages in an amount to be determined at trial;

C.      For plaintiffs' costs and expenses;

D.      For plaintiffs' attorneys' fees;

E.      For such further relief as the Court finds just and equitable.

Dated:   Brooklyn, New York
         March 5, 2012

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiffs*

by:  _____
        Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627

NITSANA DARSHAN-LEITNER
*Israeli counsel for plaintiffs*
Beit Hakeren, 10 Hata'as Street
Ramat Gan, 55212
Israel